E-FILED
Tuesday, 28 April, 2026  04:46:52 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

MICHAEL E.,

    *Plaintiff,*

v.

COMMISSIONER OF SOCIAL
SECURITY,

    *Defendant.*

Case No. 1:25-cv-01325-JEH-RLH

## REPORT & RECOMMENDATION

Plaintiff Michael E. ("Michael") filed this suit to challenge an administrative law judge's finding that he was not disabled under the Social Security Act and thus ineligible to receive disability benefits. This case has been referred for a report and recommendation. Upon review, the Court finds that substantial evidence supports the ALJ's decision, so the Court recommends that it be affirmed.

## LEGAL STANDARD

### I.    The Social Security Act

The Social Security Act—and the regulations adopted under it—explain in detail who is eligible to receive social security benefits. To qualify, a claimant must be sixty-five years of age, blind, or disabled. 20 C.F.R. § 416.202(a)(1)–(3). A claimant is disabled if she cannot "do any substantial gainful activity" because she suffers from "any medically determinable physical or mental impairment" that is either life-threatening or chronic. 42 U.S.C. § 423(d)(1)(A).

To implement that definition, the Social Security Administration has developed a five-step evaluation process. *See* 20 C.F.R. § 416.920(a)(1). The steps proceed sequentially:

**Step One.** Is the claimant currently engaged in substantial gainful activity?

**Step Two.** Does the claimant have a severe mental or physical impairment—i.e., an impairment that significantly limits their ability to do basic work activities—or a combination of them?

**Step Three.** Does the mental or physical impairment appear on an enumerated list (called "listings")? If not, is it nonetheless medically equal to one of those listings?

**RFC Assessment.** What is the claimant's residual functional capacity (RFC)—that is, the most they can still do despite their limitations?

**Step Four.** Based on the claimant's RFC, can they perform their past work?

**Step Five.** Based on the claimant's RFC, can they perform other work?

*See id.* § 416.920(a)(4)(i)–(v). The ALJ begins, of course, at step one. If it yields an affirmative answer (i.e., the claimant is working), the claimant is not disabled, and the inquiry ends. If step two yields a negative answer (i.e., the claimant does not have a severe impairment), the claimant is not disabled, and the inquiry ends. *See id.* §416.920(a)(4)(i)–(ii). Step three, however, is dispositive: If the claimant's impairment appears on a listing, the claimant is considered disabled and eligible for benefits. *See id.* § 416.920(a)(4)(iii). If the claimant's impairment does not appear on or medically equal a listing, the ALJ crafts an "RFC Assessment," which analyzes "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from [their] impairment." *Moore v. Colvin*, 743 F.3d 1118, 1121

(7th Cir. 2014). If either steps four or five yield an affirmative answer (i.e., the claimant can perform their old job or adjust to a new one in light of the RFC), the claimant is not disabled. *See* 20 C.F.R. § 416.920(a)(4)(iv)–(v).

The claimant has the burdens of production and persuasion through step four. *See Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). At step five, the burden shifts to the Commissioner to show that the claimant can engage in some type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

## II.    Standard of Review

A court's function on review is limited to determining whether the ALJ's findings are supported by substantial evidence and based upon proper legal criteria. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, Courts may not try the case de novo or supplant the ALJ's factual findings with their own. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). As such, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence, in turn, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (explaining that the threshold "is not high"); *Schneck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) ("Substantial evidence may be less than the weight of the evidence, and more than a scintilla." (citation modified)). Yet, although the ALJ's

decision commands deference, courts may not simply "rubber stamp" it. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

The Seventh Circuit has emphasized that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Instead, ALJ's need only "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow . . . a reviewing court, to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review.'" *Id.* at 1054 (alteration in original) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary"—not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Therefore, courts reviewing for substantial evidence may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [their] judgment for the ALJ's determination so long as substantial evidence supports" the decision under review. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

In short, the ALJ must build "an accurate and logical bridge" between the evidence in the record and his conclusions. *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013).

## BACKGROUND

### I.    Michael

Michael was born in 1972, (R. at 71[1]), and has a high-school education, (R. at 327). He has worked in various roles, including at a call center, a design studio, and a car dealership. (R. at 327.) On a function report that Michael completed as part of the application process, he claimed to be unable to work primarily due to his rheumatoid arthritis. (R. at 336.) He explained that he has experienced symptoms from the condition for "nearly 20 years," that it has greatly reduced his ability to function "in nearly all day-to-day activities," and that "[e]verything hurts all the time." (R. at 336.) He also explained that his condition results in poor sleep, "brain fog," and a total loss of short-term memory. (R. at 336.)

### II.    Procedural History

In September 2022, Michael filed an application with the Social Security Administration for disability benefits, alleging that he has been disabled since January 1, 2019. (R. at 24.) His application was initially denied in March 2023 and denied upon reconsideration in August. (R. at 24.) He then requested a hearing before an ALJ, which took place in February 2024, (R. at 39). Present at that hearing were Michael, his attorney, and a vocational expert. (R. at 39.) Both Michael and the vocational expert testified. (R. at 55.)

---

[1] "R." refers to the Certified Administrative Record filed on November 24, 2025. (Doc. 8.) The page numbers refer to the black page numbers at the bottom right of the transcript, rather than the green page numbers generated automatically by CM/ECF at the top right of the page.

After the hearing, the ALJ issued a written opinion concluding that Michael was not disabled and therefore not entitled to disability benefits. (R. at 34.) In response, Michael sought review of the ALJ's decision with the Appeals Council, but his request was denied. (R. at 9.) Michael then filed a complaint in this Court to challenge the ALJ's decision. (Doc. 1.) Two months later, in October 2025, the case was stayed due to a lapse in government appropriations. (Text Order dated Oct. 7, 2025.) The stay was lifted on November 14, 2024, and the Commissioner filed the certified administrative record two weeks later. (Doc. 8.) That triggered a deadline of December 24, 2025 for Michael's opening brief; when no such brief was filed, the Court extended Michael's deadline to January 14, 2026. (Text Order dated Dec. 31, 2026.) Michael timely filed his brief, (Doc. 9), and, after receiving two extensions of time, the Commissioner responded, (Doc. 14

### III.   The ALJ's Decision

In his opinion, the ALJ used the five-step evaluation process outlined above to determine whether Michael was disabled. At step one, he determined that Michael has not engaged "in substantial gainful activity" from his alleged onset date of January 1, 2019. (R. at 26.) At step two, the ALJ found that Michael had three severe impairments: (1) degenerative disc disease; (2) seronegative rheumatoid arthritis; and (3) obesity. (R. at 27.) At step three, the ALJ concluded that none of those impairments met or medically equaled any of the listed impairments. (*See* R. at 27–28.) Before proceeding to steps four and five, the ALJ crafted the following RFC assessment:

[Michael] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following non-exertional limitations. He should avoid climbing ladders, ropes or scaffolds. He should climb ramps and/or stairs, balance, stoop, kneel, crouch and/or crawl no more than occasionally. He should reach overhead no more than occasionally, and he should reach in any other direction no more than frequently. He should handle and finger no more than frequently. He should avoid concentrated exposure to temperature extremes, humidity, vibration, and hazards like unprotected heights and dangerous machinery.

(R. at 28.) At step four, the ALJ found that Michael's RFC allowed him to perform his past relevant work as an appointment clerk. (R. at 32.) Although this finding effectively concluded the disability adjudication process, the ALJ nonetheless proceeded to step five, where he determined that "there were other jobs that existed in significant numbers in the national economy that" Michael could have performed during the relevant period. (R. at 32.) Examples of those jobs included cashier, marker, router, and document preparer. (R. at 33.) Based on the ALJ's conclusion at steps four and five, he determined that Michael was not disabled. (R. at 34.)

## DISCUSSION

Michael is not a lawyer, so the Court reads his brief "liberally." *Stevens v. Navistar Int'l Transp. Corp.*, 244 F. Supp. 2d 906, 910 (N.D. Ill. 2002). But that does not absolve Michael from complying with the rules of procedure. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006). The rules governing social security appeals are set forth in Title XIV of the Federal Rules of Civil Procedure and are collectively entitled, "Supplemental Rules for Social Security Actions Under 42 U.S.C. § 406(g)." As relevant here, Rule 5 provides that social security proceedings in federal court are "presented for decision by the parties' briefs." The Rule elaborates that "[a] brief must support assertions of fact by citations to particular parts of the record." Michael's

7

brief is a one-page letter with no citations to the administrative record, the ALJ's opinion, or pertinent legal authority. By failing to cite factual and legal assertions, it violates Rule 5.

In a similar vein, the Seventh Circuit has held that social security claimants waive arguments that are either "perfunctory and undeveloped" or "unsupported by pertinent authority." *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016). For reasons discussed, the Court does not hold Michael's brief to the "stringent standards" it demands of briefs drafted by lawyers. *Haines*, 404 U.S. at 520. But neither will the Court, of its own accord, conduct a de novo review of the ALJ's opinion. In short, the Court construes Michael's brief "liberally"; it will not make arguments for him. *Stevens*, 244 F. Supp. 2d at 910.

Michael begins by stating that he has "been diagnosed with Seronegative Rheumatoid Arthritis," ("SRI") which "has no cure, is degenerative, and . . . qualifies for SSDI." (Pl. Br. 1.[2]) Yet the ALJ explicitly recognized that SRI was among Michael's severe impairments—meaning that it "significantly limits" Michael's "ability to do basic work activities." 20 C.F.R. § 404.1520(c). To the extent that Michael argues that this diagnosis *automatically* qualifies him to receive benefits, the ALJ also considered and rejected whether Michael's SRI met or medically equaled a listed impairment. (*See* R. at 28.) In doing so, the ALJ correctly recognized that Listing 14.09 requires a "documented need" for an assistive device. (R. at 28.) Put simply, under Listing 14.09, a "plaintiff will be found disabled at Step 3 if she needs

---

[2] "Pl. Br." refers to Michael's brief, filed January 14, 2026. (Doc. 9.)

both arms to help her walk, or one arm to help her walk and cannot use her other arm to work." *Arnette R. v. Kijakazi*, No. 22-cv-4225, 2023 WL 3043199, at *6 (N.D. Ill. Apr. 21, 2023). Because Michael introduced no evidence that he fit that description, the ALJ correctly concluded that his SRI did not satisfy Listing 14.09. (*See* R. at 29 (explaining that Michael is "currently looking for a walker or wheelchair, when needed").)

Michael also challenges the hypotheticals the ALJs posed to the vocational expert. In particular, he argues that the ALJ did not inform the vocational expert "of the chronic pain in" his neck or his sleep deprivation. These symptoms, Michael asserts, affect his "ability to deal with others and the ability to focus on tasks at the place of employment." (Pl. Br. 1.) But it is not particular *symptoms* that ALJs must include in their questions to vocational experts; it is all of the claimant's "limitations" that are "supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). Here, the ALJ posed two hypotheticals to the vocational expert that accounted for "light work," along with additional limitations (e.g., limits on overhead reaching, handling, fingering, exposure to extreme temperatures and unprotected heights). (*See* R. at 65–66.) In response, the expert testified that the job of "appointment clerk"—which is how the expert characterized Michael's previous work—would fit "within that hypothetical." (R. at 66.) Accordingly, the ALJ properly included in his hypothetical limitations that were supported by the record. Nor was the ALJ's failure to discuss particular symptoms—like sleep deprivation—error. That is because the ALJ found those allegations unsubstantiated. (R. at 31 (rejecting Michael's

allegations of "brain fog" and "memory/concentration" issues because "there is no evidence of ongoing reports of the same to his treating sources during the relevant time").) The ALJ was therefore not required to include those symptoms in the hypotheticals that he posed to the vocational expert.

Michael's brief also suggests that it "includes a reading of an MRI that the ALJ had asked for," but that his attorney was unable to retrieve before the ALJ issued his decision. But no such MRI is attached to his brief. Even if it were, this Court's review is limited to the four corners of the administrative record. *Cf. Clifford*, 227 F.3d at 869. And as the Commissioner observes, the record that Michael does reference in his brief is "dated over seven years before the period considered by the ALJ." (Comm'r Br. 5.[3]) Because the evidence that the ALJ did consider was far more recent, the ALJ did not err by failing to discuss images that were taken nine years before Michael's alleged onset date. (R. at 30 (discussing x-rays from both 2014 and 2018)).)

Finally, Michael faults his attorney (who represented him before the administration) for failing to send his 2011 MRI to the ALJ "in a timely manner." (Pl. Br. 1.) But this argument fails for the same reasons. Michael does not articulate why the ALJ would have likely reached a different conclusion, had he considered a 2011 MRI. That is particularly true, as the Commissioner observes, given that the state-agency physicians—on whom the ALJ relied—considered an MRI study that was far more recent. (Comm'r Br. 5; *see also* R. at 31 – 32 (discussing state-agency opinions); R. at 187 (state-agency physician at the initial level explaining his reliance on a 2014

---

[3] "Comm'r Br." refers to the Commissioner's response brief, filed April 15, 2026. (Doc. 14.)

MRI).) And at the hearing, the ALJ explicitly asked Michael's attorney whether he intended to submit additional records. (R. at 43.) Michael's attorney responded that the additional records were "well have to [sic: after] date last insured," so he was "not sure if it's relevant to what we're doing here." (R. at 43–44.)

In short, remand on the basis of new evidence is appropriate only where the evidence is "material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). And "material" in this context means that there is a "reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). Because Michael's 2011 MRI would not likely have changed the outcome, remand would be inappropriate.

## CONCLUSION

IT IS THEREFORE RECOMMENDED that the ALJ's decision be affirmed. The parties have fourteen days from service of this Report and Recommendation to object to it. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). By failing to timely object, the parties will waive their right to do so. *See Goyal v. Gas Tech. Inst.,* 389 Fed. App'x 539, 543 (7th Cir. 2010).

*So Recommended.*

Entered this 28th day of April 2026.

s/ Ronald L. Hanna

Ronald L. Hanna
United States Magistrate Judge

11